# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **STEVEN K. SHULL** : | |
| 7314 Buckeye Rd. : | |
| Sugar Grove, Ohio 43155 : | |
| : | |
| Plaintiff, : | CASE NO. 2:17-cv-25 |
| : | |
| v. : | JUDGE |
| : | |
| : | MAGISTRATE JUDGE |
| **T&R PROPERTIES, INC.** : | |
| 3895 Stoneridge Lane : | |
| Dublin, Ohio 43017 : | **Jury Demand Endorsed Hereon** |
| : | |
| Defendant. : | |

## COMPLAINT

NOW COMES Plaintiff Steven K. Shull ("Plaintiff" or "Mr. Shull") and proffers this Complaint for damages against T & R Properties, Inc. ("Defendant" or "T&R").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §12101, *et seq*. and the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112").

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court's jurisdiction in the matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

4. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that Plaintiff resides in the Southern District of Ohio, and because Defendant conducts substantial business in the Southern District of Ohio.

## THE PARTIES

5. Plaintiff is a natural person residing in Fairfield County, Ohio.

6. Plaintiff is an "employee" as defined by the ADA and R.C. Chapter 4112.

7. Defendant is an "employer" as defined by the ADA and R.C. Chapter 4112.

8. Defendant conducts substantial business in the Southern District of Ohio.

## FACTUAL BACKGROUND

9. Plaintiff began working for Defendant in or around July 2001 and continued working for it until approximately January 2009 when Plaintiff voluntarily left his employment.

10. Defendant recruited Plaintiff to return to work with it in 2011 and Plaintiff became reemployed by Defendant in or around June 2011 until August 11, 2015.

11. Plaintiff's most recent position with Defendant was Maintenance III. As a Maintenance III, Mr. Shull was responsible for performing maintenance on Defendant's property, River Valley Apartments.

12. During his employment with Defendant, Mr. Shull met or exceeded his superiors' expectations. He received certificates and regular bonuses.

13. On or about March 14, 2015, Mr. Shull was hospitalized in the ICU for serious physical impairments that constitute disabilities. In particular, Plaintiff was diagnosed with Type 2 diabetes, pancreatitis, kidney ketoacidosis, and severe vision issues.

14. Mr. Shull continued to suffer from physical impairments until he was cleared to return to work without restrictions beginning on June 15, 2015.

15. Prior to his return to work, Mr. Shull delivered his return to work notice to Defendant on June 10, 2015. Plaintiff did not have any restrictions.

16. Nevertheless, on June 12, 2015, Defendant notified Mr. Shull that he must complete a "re-employment" physical and drug screen with a physician that Defendant selected. Defendant scheduled Mr. Shull's appointment for June 15, 2015.

17. At the appointment on June 15, 2015, Defendant's physician Dr. Michael Kelley ("Dr. Kelley") could not find any reason to prohibit Mr. Shull from returning to work so he requested that Mr. Shull provide him with his blood work and medical history.

18. Mr. Shull's physician Dr. Anokh Kondru ("Dr. Kondru") sent Mr. Shull's complete medical history to Dr. Kelley the next day.

19. On June 16, 2015, Dr. Kelley called Mr. Shull and told him he was approving his return to work without any restrictions.

20. Even though he had been cleared to return to work without any restrictions by Dr. Kondru and Dr. Kelley, Mr. Shull did not hear from Defendant until June 19, 2015.

21. On June 19, 2015, Robyn in Defendant's Human Resources Department called Plaintiff and asked him to come to T&R's corporate office.

22. Mr. Shull went to Defendant's corporate office where he met with Tammy Potts ("Tammy"), T&R's COO & CFO, and Ron Sabatino ("Ron"), T&R's Owner & President.

23. During the meeting, Tammy and Ron questioned Mr. Shull in great detail about the specific health issues he suffered from.

24. In light of the scrutiny from Tammy and Ron, Plaintiff understood that they questioned whether he was capable of performing his job duties despite being cleared without restrictions.

25. Then, Tammy and Ron gave Mr. Shull two write-ups for purported incidents that occurred while he was on medical leave. Defendant suspended Mr. Shull was suspended for four days.

26. In addition, Mr. Shull was told that his new anniversary date would be changed to June 29, 2015 so he would lose his accumulated sick and vacation leave. Tammy also told Mr. Shull he was, and would continue to be, held to a higher standard than other T&R employees.

27. It was at this time Mr. Shull knew that T&R intended to terminate his employment in the near future. Indeed, over the course of Mr. Shull's employment, he was in charge of hiring maintenance employees. On numerous occasions, Ron directed Mr. Shull to end interviews with elderly and "unhealthy looking" candidates because Ron viewed these individuals as liabilities to T&R.

28. Following Plaintiff's return from medical leave, Defendant discriminated and retaliated against Plaintiff by micromanaging him and treating him less favorably than non-disabled employees.

29. T&R terminated Mr. Shull's employment on August 11, 2015 because of his disabilities, record of disabilities, or because he was regarded as disabled.

## COUNT I
**(Disability Discrimination – Americans with Disabilities Act)**

41. All of the preceding paragraphs are realleged as if fully rewritten herein.

42. At all times material herein, Plaintiff was disabled, or regarded as being disabled, as defined in 42 U.S.C. §12102.

43. In March 2015, Plaintiff was diagnosed with Type 2 diabetes, pancreatitis, kidney ketoacidosis, and severe vision issues. All of these physical impairments individually or collectively constitute disabilities under 42 U.S.C. §12102(1)(A).

30. At all times material herein, Plaintiff's impairments substantially limited his ability to perform major life activities. In addition, Plaintiff's impairments substantially limited major bodily functions.

31. In the alternative, Defendant discriminated against Plaintiff because of his record of having an impairment as defined in 42 U.S.C. §12102(1)(B).

32. Despite his physical impairment(s), Plaintiff was able to perform the essentials functions of his job with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

44. Defendant knew or had reason to know that Plaintiff suffered from a disability, and/or regarded him as disabled.

45. Defendant treated Plaintiff less favorably than other similarly situated employees without disabilities.

46. Defendant discriminated against Plaintiff because of his disability, perceived disability, or record of disability by taking the following non-exhaustive list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

48. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
### (Retaliation – Americans with Disabilities Act)

49. All of the preceding paragraphs are realleged as if fully rewritten herein.

50. Plaintiff engaged in a protected activity by requesting a reasonable accommodation for his disability in the form of medical leave from work for treatment for his disabilities.

51. Defendant knew Plaintiff engaged in a protected activity.

52. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

53. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

54. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
**Unlawful Medical Examination and Disclosure of Confidential Information**

55. All of the preceding paragraphs are realleged as if fully rewritten herein.

56. This claim is brought under federal law, pursuant to 42 U.S.C. §12112(d)(4)(A) which prohibits an employer from requiring a medical examination, unless the examination is shown to be job-related and consistent with a business necessity.

57. Despite Plaintiff being properly examined and diagnosed by Dr. Kondru, Defendant required Plaintiff to travel to a physician selected by Defendant, namely Dr. Kelley, so that it could conduct an unlawful medical examination.

58. The medical examination was neither job-related nor consistent with a business necessity.

59. Furthermore, 42 U.S.C. §12112(d)(4)(C) requires that information obtained regarding the medical condition of an employee be treated as a confidential medical record with certain exceptions.

60. Upon information and belief, Defendant commingled Plaintiff's medical documents in his personnel file with non-medical documents, in violation of the ADA.

61. Defendant purposefully required an unlawful medical examination and improperly commingled Plaintiff's confidential medical records in his personnel file.

62. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

63. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT IV
### (Disability Discrimination – R.C. §4112.02)

64. All of the preceding paragraphs are realleged as if fully rewritten herein.

65. At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

66. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A) of the Ohio Revised Code.

67. Defendants knew Plaintiff was disabled and/or regarded him as disabled.

68. In the alternative, Defendant discriminated against Plaintiff because of his record of having an impairment as defined in R.C. §4112.01(A)(13).

69. Plaintiff's disability substantially limited his ability to perform several major life functions.

70. Defendant discriminated against Plaintiff because of his disability, perceived disability, or record of disability by taking the following non-exhaustive list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and benefits.

72. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

73. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages.

## COUNT V
### (Retaliation – R.C. §4112.02)

74. All of the preceding paragraphs are realleged as if fully rewritten herein.

75. Plaintiff engaged in a protected activity by requesting a reasonable accommodation for his disability in the form of medical leave from work for treatment.

76. Defendant knew Plaintiff engaged in a protected activity.

77. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhausted list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

78. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and benefits.

79. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

80. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay,

compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Matthew J.P. Coffman*

Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1457 S. High St.
Columbus, Ohio 43207
Telephone:  (614) 949-1181
Facsimile:  (614) 386-9964
*mcoffman@coffmanlegal.com*

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of eight (8) persons to hear all issues so triable.

/s/ *Matthew J.P. Coffman*

Matthew J.P. Coffman (0085586)