IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **STEVEN K. SHULL** 7314 Buckeye Rd. Sugar Grove, Ohio 43155 | : : : : | |
| Plaintiff, | : : | CASE NO. 2:17-cv-25 |
| v. | : : | JUDGE WATSON |
| | : | MAGISTRATE JUDGE DEAVERS |
| **T&R PROPERTIES, INC.** 3895 Stoneridge Lane Dublin, Ohio 43017 | : : : | **Jury Demand Endorsed Hereon** |
| Defendant. | : : | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff Steven K. Shull ("Plaintiff" or "Mr. Shull") and proffers this First Amended Complaint for damages against T & R Properties, Inc. ("Defendant" or "T&R"), hereby stating as follows:

**JURISDICTION AND VENUE**

1.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and disability discrimination in violation of 42 U.S.C. § 12112, *et seq.*, of Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended ("ADAAA"). Plaintiff also claims of disability discrimination in violation of Ohio Revised Code Chapter 4112 ("Chapter 4112"). Plaintiff brings this action to obtain relief provided in the FMLA, the ADA, and Chapter 4112 as a result of Defendant's discriminatory and retaliatory conduct towards him resulting in loss of wages, compensation, and benefits.

2.  This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains

supplemental subject matter jurisdiction because Plaintiff's state law claims are so related to the federal claims that they share a common core of operative facts.

3.     Venue is proper in this forum pursuant to 28 U.S.C. §1391, because the Plaintiff entered into an employment relationship with Defendant in Franklin County, Ohio, which is in the Southern District of Ohio, a substantial part of the events or omission giving rise to the claim occurred in the Southern District of Ohio, and Defendant's principal place of business is in the Southern District of Ohio.

## THE PARTIES

4.     Plaintiff is a natural person residing in Fairfield County, Ohio.

5.     At all times relevant herein, Plaintiff was an "eligible employee" as defined in the FMLA in that he was employed by Defendant for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before he sought FMLA-qualifying leave from Defendant. In addition, Plaintiff was an "employee" within the meaning of the ADA and Ohio Revised Code § 4112.01(A)(3).

6.     At all times material herein, Defendant was an "employer" of Plaintiff as defined by the FMLA, 29 U.S.C. § 2611, *et seq.*, because it engaged in commerce or in any industry or activating affecting commerce and employs or employed at least fifty (50) or more employees during all times relevant for each working day during each of 20 or more calendar years in the current or preceding calendar year.

7.     Defendant is also an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5) and Ohio Revised Code § 4112.01(A)(2).

**FACTUAL BACKGROUND**

8. Plaintiff began working for Defendant in or around July 2001 and continued working for it until approximately January 2009 when Plaintiff voluntarily left his employment.

9. Defendant recruited Plaintiff to return to work with it in 2011 and Plaintiff became reemployed by Defendant in or around June 2011 until August 11, 2015.

10. Plaintiff's most recent position with Defendant was Maintenance III. As a Maintenance III, Mr. Shull was responsible for performing maintenance on Defendant's property, River Valley Apartments.

11. During his employment with Defendant, Mr. Shull met or exceeded his superiors' expectations. He received certificates and regular bonuses.

12. On or about March 14, 2015, Mr. Shull was hospitalized in the ICU for serious physical impairments that constitute disabilities under the ADA and which constitute a serious health condition under the FMLA.

13. In particular, Plaintiff was diagnosed with Type 2 diabetes, pancreatitis, kidney ketoacidosis, and severe vision issues.

14. Mr. Shull continued to suffer from physical impairments until he was cleared to return to work without restrictions beginning on June 15, 2015.

15. Prior to his return to work, Mr. Shull delivered his return to work notice to Defendant on June 10, 2015. Plaintiff did not have any restrictions.

16. Nevertheless, on June 12, 2015, Defendant notified Mr. Shull that he must complete a "re-employment" physical and drug screen with a physician that Defendant selected. Defendant scheduled Mr. Shull's appointment for June 15, 2015.

17. At the appointment on June 15, 2015, Defendant's physician Dr. Michael Kelley ("Dr. Kelley") could not find any reason to prohibit Mr. Shull from returning to work so he requested that Mr. Shull provide him with his blood work and medical history.

18. Mr. Shull's physician Dr. Anokh Kondru ("Dr. Kondru") sent Mr. Shull's complete medical history to Dr. Kelley the next day.

19. On June 16, 2015, Dr. Kelley called Mr. Shull and told him he was approving his return to work without any restrictions.

20. Even though he had been cleared to return to work without any restrictions by Dr. Kondru and Dr. Kelley, Mr. Shull did not hear from Defendant until June 19, 2015.

21. On June 19, 2015, Robyn in Defendant's Human Resources Department called Plaintiff and asked him to come to T&R's corporate office.

22. Mr. Shull went to Defendant's corporate office where he met with Tammy Potts ("Tammy"), T&R's COO & CFO, and Ron Sabatino ("Ron"), T&R's Owner & President.

23. During the meeting, Tammy and Ron questioned Mr. Shull in great detail about the specific health issues he suffered from.

24. In light of the scrutiny from Tammy and Ron, Plaintiff understood that they questioned whether he was capable of performing his job duties despite being cleared without restrictions.

25. Then, Tammy and Ron gave Mr. Shull two write-ups for purported incidents that occurred while he was on medical leave. Upon information and belief, Mr. Shull had no previous write-ups prior to the two he received related to alleged incidents which occurred while Mr. Shull was on medical leave. Defendant suspended Mr. Shull for four days because of the write-ups related to incidents which occurred while he was on medical leave.

26. In addition, Mr. Shull was told that his new anniversary date would be changed to June 29, 2015 so he would lose his accumulated sick and vacation leave. Tammy also told Mr. Shull he was, and would continue to be, held to a higher standard than other T&R employees.

27. It was at this time Mr. Shull knew that T&R intended to terminate his employment in the near future. Indeed, over the course of Mr. Shull's employment, he was in charge of hiring maintenance employees. On numerous occasions, Ron directed Mr. Shull to end interviews with elderly and "unhealthy looking" candidates because Ron viewed these individuals as liabilities to T&R.

28. Following Plaintiff's return from medical leave, Defendant failed to immediately reinstate him, discriminated and retaliated against Plaintiff by micromanaging him and treating him less favorably than non-disabled employees.

29. T&R terminated Mr. Shull's employment on August 11, 2015 because of his disabilities, record of disabilities, or because he was regarded as disabled. Furthermore, Defendant terminated Plaintiff in retaliation for taking the FMLA-qualifying medical leave by terminating his employment.

## COUNT I
### (Disability Discrimination – Americans with Disabilities Act)

30. All of the preceding paragraphs are realleged as if fully rewritten herein.

31. At all times material herein, Plaintiff was disabled, or regarded as being disabled, as defined in 42 U.S.C. §12102.

32. In March 2015, Plaintiff was diagnosed with Type 2 diabetes, pancreatitis, kidney ketoacidosis, and severe vision issues. All of these physical impairments individually or collectively constitute disabilities under 42 U.S.C. §12102(1)(A).

33. At all times material herein, Plaintiff's impairments substantially limited his ability to perform major life activities. In addition, Plaintiff's impairments substantially limited major bodily functions.

34. In the alternative, Defendant discriminated against Plaintiff because of his record of having an impairment as defined in 42 U.S.C. §12102(1)(B).

35. Despite his physical impairment(s), Plaintiff was able to perform the essentials functions of his job with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

36. Defendant knew or had reason to know that Plaintiff suffered from a disability, and/or regarded him as disabled.

37. Defendant treated Plaintiff less favorably than other similarly situated employees without disabilities.

38. Defendant discriminated against Plaintiff because of his disability, perceived disability, or record of disability by taking the following non-exhaustive list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

39. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

40. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
**(Retaliation – Americans with Disabilities Act)**

41. All of the preceding paragraphs are realleged as if fully rewritten herein.

42. Plaintiff engaged in a protected activity by requesting a reasonable accommodation for his disability in the form of medical leave from work for treatment for his disabilities.

43. Defendant knew Plaintiff engaged in a protected activity.

44. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

45. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

46. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
**Unlawful Medical Examination and Disclosure of Confidential Information**

47. All of the preceding paragraphs are realleged as if fully rewritten herein.

48. This claim is brought under federal law, pursuant to 42 U.S.C. §12112(d)(4)(A) which prohibits an employer from requiring a medical examination, unless the examination is shown to be job-related and consistent with a business necessity.

7

49. Despite Plaintiff being properly examined and diagnosed by Dr. Kondru, Defendant required Plaintiff to travel to a physician selected by Defendant, namely Dr. Kelley, so that it could conduct an unlawful medical examination.

50. The medical examination was neither job-related nor consistent with a business necessity.

51. Furthermore, 42 U.S.C. §12112(d)(4)(C) requires that information obtained regarding the medical condition of an employee be treated as a confidential medical record with certain exceptions.

52. Upon information and belief, Defendant commingled Plaintiff's medical documents in his personnel file with non-medical documents, in violation of the ADA.

53. Defendant purposefully required an unlawful medical examination and improperly commingled Plaintiff's confidential medical records in his personnel file.

54. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

55. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT IV
### 29 U.S.C. § 2615, *et seq.* - FMLA Interference with Rights and Retaliation

56. All of the preceding paragraphs are realleged as if fully rewritten herein.

57. At all times relevant, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

58. At all times relevant, Defendant was an "employer" as defined by 29 U.S.C. § 2611(4)(A).

59. Plaintiff's request for, and use of, FMLA leave beginning in March 2015 was for his "serious health condition" as defined by 29 U.S.C. § 2611(11)(B).

60. On or about June 15, 2015, Plaintiff was cleared by his physician to return to work without restrictions.

61. Despite the fact that Plaintiff's physician cleared him to return to work without restrictions, Defendant refused to allow him to return until he was seen by a physician it selected. Plaintiff was only permitted to return to work after Defendant's physician also cleared him following a suspension for write-ups related to things which occurred while Plaintiff was on medical leave.

62. Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave. An employer is also prohibited from discriminating or retaliating against an employee who exercises a right under the FMLA. *See* 29 U.S.C. § 2615(a)(2).

63. Pursuant to 29 U.S.C. § 2614(a)(1), an employer is required to reinstate an employee to his former position or equivalent position when he returns from leave. *See also* 29 C.F.R. § 825.214(a). An "equivalent position" is one that is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges and status." 29 C.F.R. § 825.215. It must also involve the "same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id.*

64. Defendant has willfully and/or recklessly retaliated against, interfered with, restrained, and/or denied Plaintiff's rights in violation of the FMLA, by taking the following non-exhaustive list of actions: disciplining him for incidents that occurred while he was on medical leave, suspending him for incidents which occurred while he was on medical leave, refusing to reinstate

Plaintiff immediately upon his return from FMLA-qualifying medical leave, requiring Plaintiff to be cleared by Defendant's physician, taking away certain benefits once he was reinstated, terminating his employment, and otherwise treating Plaintiff less favorably than similarly situated employees who did not exercise rights under the FMLA.

65. As a result of Defendant's interference and retaliation, Plaintiff was harmed.

66. Defendant lacked good faith to believe it had not violated the FMLA in its actions.

67. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to protect himself from Defendant, including costs and attorneys' fees in accordance with 29 U.S.C. § 2617(a).

## COUNT V
### (Disability Discrimination – R.C. §4112.02)

68. All of the preceding paragraphs are realleged as if fully rewritten herein.

69. At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

70. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A) of the Ohio Revised Code.

71. Defendants knew Plaintiff was disabled and/or regarded him as disabled.

72. In the alternative, Defendant discriminated against Plaintiff because of his record of having an impairment as defined in R.C. §4112.01(A)(13).

73. Plaintiff's disability substantially limited his ability to perform several major life functions.

74. Defendant discriminated against Plaintiff because of his disability, perceived disability, or record of disability by taking the following non-exhaustive list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against

him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and benefits.

76. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

77. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages.

### COUNT VI
**(Retaliation – R.C. §4112.02)**

78. All of the preceding paragraphs are realleged as if fully rewritten herein.

79. Plaintiff engaged in a protected activity by requesting a reasonable accommodation for his disability in the form of medical leave from work for treatment.

80. Defendant knew Plaintiff engaged in a protected activity.

41. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhausted list of actions: disciplining him, suspending him, taking away certain benefits, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

81. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and benefits.

82. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

83. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages.

**WHEREFORE**, Plaintiff demands back pay and benefits, front pay and benefits, and additional damages to be determined at trial, including but not limited to statutory damages, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorney's fees, and all other relief the Court deems just and appropriate.

Respectfully submitted,

/s/ *Matthew J.P. Coffman*

Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1457 S. High St.
Columbus, Ohio 43207
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
*mcoffman@coffmanlegal.com*

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of eight (8) persons to hear all issues so triable.

/s/ *Matthew J.P. Coffman*

Matthew J.P. Coffman

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March, 2017 the foregoing *First Amended Collective Action Complaint* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by electronic mail. Parties may access this filing through the Court's ECF system.

/s/ *Matthew J.P. Coffman*
Matthew J.P. Coffman